UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ALVAREZ,

                         Plaintiff,

        v.

COUNTY OF ORANGE, NEW YORK, et
al.,

                         Defendants.

No. 13-CV-7301 (KMK)

OPINION AND ORDER

Appearances:

Brian Michael Rudner, Esq.
Michael John Paleudis, Esq.
Rudner & Paleudis, LLC
White Plains, NY
*Counsel for Plaintiff*

Matthew Joseph Nothnagle, Esq.
Orange County Attorney
Goshen, NY
*Counsel for Defendants*

Susan Z. Stockburger, Esq.
Orange County Department of Law
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Luis Alvarez ("Plaintiff") filed the instant Complaint pursuant to 42 U.S.C.

§§ 1983 and 1988 against the County of Orange, New York ("Orange County"), the Sheriff of

Orange County, Carl E. DuBois ("DuBois"), Sergeant Laurence Cottone ("Cottone"), and

Deputy Sheriff Rodney Carpentier ("Carpentier"), alleging violations of the Fourth and

Fourteenth Amendments, and claims of false arrest, negligent training and supervision, and respondeat superior liability under New York Law.   (First Am. Compl. ("Am. Compl.") ¶¶ 12–18 (Dkt. No. 13).)   For the following reasons, Defendants' Motion To Dismiss is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and certain documents submitted by Defendants that the Court considers, as explained below, and are taken as true for the purpose of resolving the instant Motion.  Plaintiff is the owner and president of Newburgh Towing & Service, Inc. ("Newburgh Towing"), located in the City of Newburgh, County of Orange, State of New York, which provides towing services for hire.  (Am. Compl. ¶ 16.)  On or about December 28, 2010, Plaintiff was hired by Panayiotis Andrianis ("Andrianis") to transport a large piece of equipment, known as a Bobcat, (the "Bobcat") from the Town of Fishkill, New York ("Fishkill") to the City of Beacon, New York ("Beacon").  (*Id.* ¶ 17.)  Plaintiff performed the requested services, including towing and transportation services to Andrianis.  (*Id.* ¶ 18.)  Andrianis refused to pay Plaintiff for the services rendered and "abandoned the Bobcat in Plaintiff's custody in the parking lot of M&T Bank in . . . Beacon." (*Id.*)

On or about December 29, 2010 at approximately 2 a.m., Plaintiff transported the Bobcat to his business location, a motor vehicle repair shop located at 230 Ann Street, Newburgh, New York ("Plaintiff's repair shop").  (*Id.* ¶ 19.)  Plaintiff called the City of Beacon Police Department ("Beacon Police Department") to notify them of the situation and "was instructed to

hold the equipment pending payment pursuant to New York State Lien Law § 184(1)." (*Id.* ¶ 20.)

On or about the same day, the City of Newburgh Police Department ("Newburgh Police Department") and the State of New York Police Department ("New York State Police Department") contacted Plaintiff to investigate allegations by the owner of the Bobcat, Summit Handling Services Inc. ("Summit"), that Plaintiff had stolen its equipment. (*Id.* ¶ 23, 25.) The Newburgh Police Department and the New York State Police Department separately "conducted . . . thorough investigation[s], including visiting and interviewing Plaintiff at his place of business, and declined to take any action against Plaintiff, indicating that no criminality had occurred and the issue was, at most, a civil matter between Plaintiff and Summit." (*Id.* ¶¶ 24, 26.)

On or about January 2, 2011, the Beacon Police Department contacted Plaintiff to investigate allegations made by Summit that Plaintiff had stolen its equipment. (*Id.* ¶ 27.) The matter was assigned to "Detective Rios, who conducted an extensive investigation extending over several days," during which the Beacon Police Department "interviewed witnesses and reviewed video surveillance from the alleged locations." (*Id.* ¶¶ 28–29.) At the conclusion of its investigation, the Beacon Police Department found no criminality and that the issue was, at most, a civil matter between Plaintiff and Summit. (*Id.* ¶ 30.)

On January 3, 2011, to "compl[y] with the requirements of New York State Lien Law § 184(2)," Plaintiff mailed, "via certified mail, return receipt requested," a notice to Summit, indicating that Plaintiff had towed and was storing the Bobcat, the amount claimed for such towing and storage, and the address and times at which the Bobcat could be recovered. (*Id.* ¶ 21.) The notice also stated that Plaintiff claimed a lien on the Bobcat and that the Bobcat

would be released to the owner or his or her lawfully designated representative "upon full payment of all charges accrued to the date that said Bobcat is released." (*Id.* ¶ 22.)

On or about January 13, 2011, Plaintiff was contacted by Cottone on behalf of the Orange County Sheriff's Office. (*Id.* ¶ 31.) Plaintiff informed Cottone that he had a lien on the Bobcat for non-payment of towing services that Plaintiff provided. (*Id.* ¶ 32.) Cottone advised Plaintiff that he planned to visit Plaintiff's repair shop later that day, at approximately 4 p.m., to continue his discussion with Plaintiff. (*Id.* ¶ 33.) Cottone arrived at Plaintiff's repair shop at approximately 9 p.m., when Plaintiff was not present, and "demanded that Plaintiff's employees release the Bobcat to him, indicating that he had a court order to pick up the equipment." (*Id.* ¶ 34.) Cottone "made numerous threats to Plaintiff's employees . . . that he would arrest everyone at the location." (*Id.* ¶ 35.) After his employees contacted him, Plaintiff arrived at his repair shop and demanded to see a copy of the order, which Cottone did not produce. (*Id.* ¶¶ 36–37.) Plaintiff refused to give the Bobcat to Cottone. (*Id.* ¶ 38.) Plaintiff informed Cottone of the investigations conducted by the Newburgh Police Department, the New York State Police Department, and the Beacon Police Department, and of "evidence that Plaintiff had complied with all aspects of the New York State Lien Law." (*Id.* ¶¶ 38–39.)

On or about January 18, 2011, at approximately 3 p.m., Plaintiff and Summit entered into an agreement by which Summit would pay $2,476.06 to Plaintiff for towing and storage fees and that Plaintiff, in turn, would return the Bobcat to Summit. (*Id.* ¶ 40.) Plaintiff and Summit also agreed that Plaintiff would hold the equipment for an additional three days until Summit's payment check cleared, and during the three-day period, Plaintiff was authorized to use the Bobcat so long as his use did not exceed five hours over three days, that he sign a rental agreement, and that he provide a certificate of insurance. (*Id.* ¶¶ 41–42.) Plaintiff went to

Summit's place of business at approximately 4 p.m. later that day to provide the certificate of insurance and sign a rental agreement, but was advised that the manager had left for the day and Plaintiff was turned away.  (*Id.* ¶ 43.)

At approximately 5 p.m. on the same day, Carpentier, along with other members of the Orange County Sheriff's Department, arrived at Plaintiff's rental shop, "placed Plaintiff in handcuffs, and ushered him into the back of a patrol car in front of numerous eyewitnesses, customers, and employees." (*Id.* ¶ 44.)  Plaintiff's arrest was at the direction and order of Cottone.  (*Id.* ¶ 45.)  In fact, Plaintiff alleges, upon information and belief, that between January 13, 2011 and January 18, 2011, Cottone participated in and oversaw the investigation that led to Plaintiff's arrest.  (*Id.* ¶ 46.)  After Plaintiff's arrest, members of the Orange County Sheriff's Department entered Plaintiff's "secure" repair shop, and authorized a tow truck driver who was hired and paid by Summit to enter onto Plaintiff's property, remove the Bobcat, and return it to Summit.  (*Id.* ¶ 47.)

Plaintiff alleges that neither Cottone nor Carpentier took photographs of the Bobcat, conducted an inspection of the equipment, made an odometer reading on the Bobcat, or gathered evidence or secured the Bobcat before it was released to Summit.  (*Id.* ¶ 48.)  Plaintiff also alleges that neither Cottone nor Carpentier obtained a search warrant or court order authorizing the release of the Bobcat to Summit and did not direct Summit to pay Plaintiff for the outstanding debt owed to Plaintiff for his towing and storage of the Bobcat.  (*Id.* ¶¶ 49–50.)

Carpentier transported Plaintiff to the Orange County Sheriff's Office, where Plaintiff was held for several hours without being told the nature of the charges against him, without being able to make a telephone call, without food or water, and without the ability to use the restroom.  (*Id.* ¶ 51.)  Cottone denied Plaintiff's request for Tylenol.  (*Id.* ¶ 52.)  Plaintiff was

then transported by members of the Orange County Sheriff's Department to the Town of New

Windsor Justice Court in Windsor, New York, where he was held for approximately one hour

prior to being arraigned on Grand Larceny in the Third Degree, Criminal Possession of Stolen

Property in the Third Degree, and Unauthorized Use of a Motor Vehicle in the Third Degree.

(*Id.* ¶¶ 53–54.)  Plaintiff was released from custody after posting bail.  (*Id.* ¶ 55.)

Plaintiff alleges upon information and belief, Carpentier executed, "at the behest of,

and/or in concert with Cottone," a felony complaint on January 14, 2011, alleging that:

> On December 29, 2010 Newburgh Towing removed a Bobcat T300 Compact
> Truck Loader serial #532015494 from 200 Main Street in the City of Beacon and
> transported it to 230 Ann Street in the City of Newburgh without the authorization
> of the owner of [Summit] or its agent Mr. David A. Morgan.  As of the above date
> [Plaintiff], as an agent of Newburgh Towing is still in possession of the Bobcat
> T300 serial #532015494.

(*Id.* ¶ 56, 58.)  Moreover, Plaintiff alleges, upon information and belief, that Carpentier, "at the

behest of, and/or in concert with Cottone" executed a second felony complaint on January 14,

2011, which provided:

> On December 29, 2010 Newburgh Towing removed a Bobcat T300 Compact
> Truck Loader serial #532015494 from 200 Main Street in the City of Beacon and
> transported it to 230 Ann Street in the City of Newburgh without the permission
> and authority of the owner [Summit], or its agent Daniel A. Morgan.  The
> estimated value of the Bobcat T300 Serial #532015494 is $40,000.

(*Id.* ¶¶ 57–58.)  The complaints were filed with the City Court of the City of Newburgh in the

State of New York.  (*Id.* ¶ 59.)  The Orange County District Attorney's Office dismissed all

felony counts against Plaintiff for lack of jurisdiction and insufficient evidence, and after a

four- day bench trial, Plaintiff was acquitted on June 17, 2011 of the misdemeanor count for

Unauthorized Use of a Motor Vehicle in the Third Degree.  (*Id.* ¶¶ 61–64.)  Plaintiff alleges that

because of the charges against him, he was "required to retain counsel, at a significant personal

cost," was unable to work for approximately sixty days due to court appearances and meetings

with his counsel, and "routinely saw acquaintances and customers at the courthouse and suffered extreme embarrassment by defending the . . . charges against him." (*Id.* ¶¶ 60, 65–66.)

Plaintiff alleges that DuBois, Cottone, and Carpenter should have been aware that Plaintiff's conduct was permissible under the New York State Lien Law, that there was no lawful basis to place Plaintiff under arrest, and that there was no lawful basis for Carpenter, acting at the behest and direction of Cottone, to execute and file the felony complaints. (*Id.* ¶¶ 69–72.) Moreover, Plaintiff alleges that DuBois, Cottone, and Carpenter "were acting outside of their jurisdiction in placing Plaintiff under arrest, as evidenced by the sworn allegations in the [f]elony [c]omplaints indicating Plaintiff's conduct occurred in Duchess County, not Orange County where the Orange County Sheriff's Office is located and regularly conducts its business." (*Id.* ¶ 73.) Plaintiff also alleges that the conduct occurred as a result of the unconstitutional policies, customs, or practices of Orange County, including the inadequate retention, training, and supervision of its employees. (*Id.* ¶ 74.) Specifically, Plaintiff alleges that as early as 2006, Orange County and DuBois were aware that Cottone had violated the constitutional rights of another individual, but failed to take corrective action. (*Id.* ¶¶ 76–77.)

###### B. Procedural History

Plaintiff filed the initial Complaint on October 16, 2013. (Dkt. No. 1.) On February 25, 2014, Plaintiff filed the Amended Complaint. (Dkt. No. 13.) In his Amended Complaint, Plaintiff asserts violations of his rights under the Fourth and Fourteenth Amendments against Cottone and Carpenter in their individual and official capacities, DuBois in his official capacity, and Orange County. (Am Compl. ¶¶ 78–104.) Plaintiff alleges that Cottone and Carpenter subjected him to false arrest, and that Orange County and DuBois failed to train their employees in violation of New York Law. (*Id.* ¶¶ 105–116.) After a conference, the Court adopted a

Scheduling Order for Defendants' Motion To Dismiss.  (Dkt. No. 17.)  Thereafter, the Parties

entered into a stipulation dismissing the New York Law claims.  (Dkt. No. 18.)  Pursuant to the

Scheduling Order, Defendants filed their Motion To Dismiss and the Parties filed their relevant

papers on August 1, 2014.  (Dkt. Nos. 19–22, 24, 26–27.)  In support of their Motion,

Defendants submitted an affidavit of Orange County Sheriff Chief Dennis Barry, ("Barry's

Affidavit") and attached several exhibits, specifically: (1) a deposition of Thomas J. Thornton, an

agent of Summit ("Thorton's Deposition"); (2) a copy of the incident report generated from a

"walk-in complaint" from Daniel A. Morgan ("Morgan") on January 14, 2011 (the "Incident

Report"); (3) Morgan's Permission and Authority document stating he did not give Alvarez

permission to lease the Bobcat, worth approximately $40,000 ("Morgan's Permission and

Authority"); (4) Morgan's deposition taken on January 14, 2011 by the Orange County Sheriff's

Office ("Morgan's January 14, 2011 Deposition"); (5) Andrianis's deposition taken on January

14, 2011 by the Orange County Sheriff's Office ("Andrianis's January 14, 2011 Deposition");

(6) Morgan's deposition given on January 18, 2011 ("Morgan's January 18, 2011 Deposition");

(7) the felony complaint against Plaintiff dated January 14, 2011 (the "Felony Complaint");

(8) the misdemeanor complaint against Plaintiff dated February 1, 2011 (the "Misdemeanor

Complaint"); (9) a January 3, 2011 bill from Newburgh Towing to Summit totaling $2,476.06

(the "January 3, 2011 Bill"); and (10) a copy of a letter from Newburgh Towing to Summit dated

January 18, 2011 (the "January 18, 2011 Letter").  (Dennis Barry Aff. in Supp. of Defs.' Mot. To

Dismiss ("Barry Aff.") (Dkt. No. 21).)

## II.  Discussion

### A.  Applicable Law

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Amended Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a

complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (italics and internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). Moreover, a "complaint is deemed to include . . . documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citation and internal quotation marks omitted); *see also Fanelli v. City of New York*, No. 13-CV-1423, 2013 WL 6017904, at *2 (S.D.N.Y. Nov. 1, 2013) (same).

### 2.  False Arrest

A "§ 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006); *see also Widget v. Town of Poughkeepsie*, No. 12-CV-3459, 2013 WL 1104273, at *4 (S.D.N.Y. Mar. 18, 2013) (same). "In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Jaegly*, 439 F.3d at 151 (internal quotation marks omitted); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." (internal quotation marks omitted)).  Under New York Law, which is applicable here, "an action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement[,] and (4) the confinement was not otherwise privileged.'" *Ackerson*, 702 F.3d at

19 (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)).

"Probable cause 'is a complete defense to an action for false arrest' brought under New

York law or § 1983." *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also*

*Conte v. County of Nassau*, No. 06-CV-4746, 2010 WL 3924677, at *12 (E.D.N.Y. Sept. 30,

2010) (same).  "Probable cause to arrest exists when the officers have . . . reasonably trustworthy

information as to [] facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that an offense has been . . . committed by the person to be arrested."

*Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).  To determine whether probable cause

existed for an arrest, a court "assess[es] whether the facts known by the arresting officer at the

time of the arrest objectively provided probable cause to arrest."  *Ackerson*, 702 F.3d at 19

(internal quotation marks omitted).  Where, as here, "there is more than one officer cooperating

in the investigation, the knowledge of each officer is presumed to be shared by all."  *Abdul-*

*Rahman v. City of New York*, No. 10-CV-2778, 2012 WL 1077762, at *5 (E.D.N.Y. Mar. 30,

2012).  Moreover, "probable cause does not require an awareness of a particular crime, but only

that some crime may have been committed."  *Ackerson*, 702 F.3d at 20 (internal quotation marks

omitted).  "The burden of establishing the absence of probable cause rests on the plaintiff," and

"[t]he question of whether or not probable cause existed may be determinable as a matter of law

if there is no dispute as to the pertinent events and the knowledge of the officers."  *Sethi v.*

*Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *4 (E.D.N.Y. June 3, 2014) (internal

quotation marks omitted); *see also Nickey v. City of New York*, No. 11-CV-3207, 2013 WL

5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause

determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubt as to the victim's veracity." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Conte*, 2010 WL 3924677, at *13 (same). "Moreover, the veracity of citizen complainants who are the victims of the very crime they report to the police is assumed." *Conte*, 2010 WL 3924677, at *13 (alterations and internal quotation marks omitted). In other words, "when a putative victim precisely identifies the alleged perpetrator of a crime and there is independent evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 515–16 (S.D.N.Y. 2013) (internal quotation marks omitted).

"[A]lthough a police officer is generally not required to investigate an arrestee's claim of innocence, 'under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause.'" *Conte*, 2010 WL 3924677, at *14 (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003)). Nevertheless, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to . . . eliminate every theoretically plausible claim of innocence before making an arrest." *Widget*, 2013 WL 1104273, at *6 (internal quotation marks omitted). "The crucial question then, is whether the arresting officers deliberately disregarded facts known to them which established" a defense. *Id.*

### 3. Qualified Immunity

"A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for

him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (citation and internal quotation marks omitted). Because qualified immunity is "an affirmative defense [that] . . . reflects an immunity from suit rather than a mere defense to liability[,] . . . . it is appropriate to decide the issue of qualified immunity, when raised, at an early stage of the litigation, such as when deciding a pre-answer motion to dismiss." *Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014) (emphasis and internal quotation marks omitted). "In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Id.* (footnote omitted) (quoting *Cerrone*, 246 F.3d at 202). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone*, 246 F.3d at 202–03 (internal quotation marks omitted). In other words, an officer is entitled to qualified immunity if (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Betts*, 2013 WL 311124, at *4 (same).

    B.  Analysis

        1.  Documents to be Considered

Defendants argue that it is appropriate for the Court to consider the documents annexed to the Barry Affidavit. (Defs.' Mem of Law ("Defs.' Mem.") 6 (Dkt. No. 22).) As discussed above, although generally a court "look[s] only to the allegations on the face of the complaint" to

13

decide a motion to dismiss, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), a court may consider documents "incorporated in the complaint by reference[] and . . . matters of which judicial notice may be taken," *Leonard F.*, 199 F.3d at 107 (internal quotation marks omitted). Moreover, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). Here, Plaintiff concedes that the Amended Complaint references the Felony Complaint, (Barry Aff. Ex. G), the January 3, 2011 Bill, (*id.* Ex. I), and the January 18, 2011 Letter, (*id.* Ex. J), and therefore the Court may properly consider these documents in resolving the Motion. (Pl.'s Mem. of Law in Opp'n to Defs.' Motion To Dismiss ("Pl.'s Mem.") 6 (Dkt. No. 24).) The Court will not, however, consider the other exhibits appended to the Barry Affidavit—specifically, Thorton's Deposition, (*id.* Ex. A), the Incident Report, (*id.* Ex. B), Morgan's Permission and Authority, (*id.* Ex. C), Morgan's January 14, 2011 Deposition, (*id.* Ex. D), Andrianis's January 14, 2011 Deposition, (*id.* Ex. E), Morgan's January 18, 2011 Deposition, (*id.* Ex. F), and the Misdemeanor Complaint, (*id.* Ex. H).

Defendants do not claim that Plaintiff incorporated the Incident Report, the depositions, and the Misdemeanor Complaint by reference, but rather argue that these documents are integral to the Amended Complaint because "the underlying facts that were before Sergeant Cottone and Deputy Carpentier are integral to determining whether the arrest was proper." (Defs.' Reply Mem. of Law ("Defs.' Reply") 2 (Dkt. No. 27).) Some courts have reasoned that it is proper to consider incident reports, arrest reports, and police complaints in resolving 12(b)(6) motions for false arrest claims because these documents are integral to such claims. *See Betts*, 2013 WL 311124, at *3 (considering a domestic incident report and the "accusatory instrument in [the

14

plaintiff's] misdemeanor prosecution" because, "[g]iven the nature of [the plaintiff's] claims, which include malicious prosecution and false arrest, the eventual charges levied against him . . . along with the [domestic incident report] provide crucial details associated with [the plaintiff's] allegations"); *Obilo v. City Univ. of City of N.Y.*, No. 01-CV-5118, 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003) (finding that the plaintiff's claim that "the allegations against him were of a conspiratorial nature and that he was therefore arrested and prosecuted without probable cause" was an "implicit reference to the incident report and police complaint filed by [the complainant], of which set forth [the] allegations against [the] plaintiff," and therefore these documents were properly considered "because they [were] incorporated by reference in the complaint") (internal quotation marks omitted)).  Other courts, however, have reached the opposite conclusion.  *See Weaver v. City of New York*, No. 13-CV-20, 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) (citing *Obilo* and explaining that the court was "not persuaded . . . that Second Circuit precedent permits consideration of an arrest report on a 12(b)(6) motion" because "mere notice or possession is not enough" and the complaint which alleged false arrest, among other things, did not "reference" the arrest report, nor was it "integral" to the plaintiff's allegations (internal quotation marks omitted)); *Fanelli v. City of New York*, No. 13-CV-1423, 2013 WL 6017904, at *2 (S.D.N.Y. Nov. 1, 2013) (taking into account a desk appearance ticket, but not a police complaint on a motion to dismiss a false arrest claim, because the desk appearance ticket was "incorporated by reference into [the] plaintiff's complaint," but the "police complaint [was] not," and it was "unclear based on [the] plaintiff's allegations whether [the] plaintiff had ever seen the police complaint prior to filing [the] action"); *Peterec v. Hilliard*, No. 12-CV-3944, 2013 WL 5178328, at *3 (S.D.N.Y. Sept. 16, 2013) (considering traffic tickets that the defendants submitted on a motion to dismiss a false

arrest claim because they were "integral" to the plaintiff's complaint, but declining to consider the incident report or the plaintiff's notice of claim because they were not "incorporated by reference[] or integral to the" complaint); *Allyn v. Rockland County*, No. 12-CV-5022, 2013 WL 4038602, at *4 (S.D.N.Y. July 30, 2013) (disregarding documents the defendants submitted on a motion to dismiss that were relevant to the defendants' claim that probable cause existed to arrest the plaintiff, because "there [was] no indication in the record that [the] plaintiff relied on [them] in drafting the complaint, and the documents were not incorporated by reference in the complaint"), *appeal dismissed* (Oct. 9, 2013); *Toliver v. City of New York*, No. 10-CV-3165, 2012 WL 7782720, at *4 (S.D.N.Y. Dec. 10, 2012), (considering arrest reports but refusing to consider depositions and the case history that was relevant to the plaintiff's false arrest claim because the plaintiff did not incorporate or rely on them in drafting his complaint) *adopted by* 2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013); *Martin v. County of Nassau*, 692 F. Supp. 2d 282, 289 (E.D.N.Y. 2010) (declining to consider police reports, witness statements, and other similar documents relating to the plaintiff's arrest because the plaintiff did not rely on the documents in framing his complaint).  The Court agrees with the courts that have refused to rely on such materials at this stage.

The Second Circuit has explained that a "necessary prerequisite for the exception" that materials integral to the complaint may be considered on a motion to dismiss "is that 'the plaintiff *rely* on the terms and effect of the document in drafting the complaint . . .; mere notice or possession is not enough.'"  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (brackets omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  It is worth noting that, "[i]n most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations

upon which the plaintiff's complaint stands or falls, but for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Id.* at 157.  Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see also DiFolco*, 622 F.3d at 111 (same).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134.

The Court will not consider the Incident Report, depositions, or the Misdemeanor Complaint, as "there is no indication in the record that [Plaintiff] relied on [them] in drafting the [Amended Complaint]." *Allyn*, 2013 WL 4038602, at *4.  These documents are obviously not "legal document[s] containing obligations upon which [Plaintiff's] complaint stands or falls." *Global Network*, 458 F.3d at 157.  Accordingly, the Court examines whether Plaintiff relied on the "terms and effect" of the documents when drafting the Amended Complaint. *Id.* at 156.  The Court acknowledges that the Amended Complaint references allegations made by Summit in connection with the investigations of the Newburgh Police Department, the New York State Police Department, and the Beacon Police Department.  (*See* Am. Compl. ¶¶ 23, 25, 27.)  Defendants argue that Plaintiff "opened the door" to the exhibits that they submit in the Barry Affidavit "when he carefully identified" these investigations.  (Defs.' Reply 4.)  The Court disagrees.  The investigations, as alleged in the Amended Complaint, were separate from the investigation that Cottone and Carpentier conducted in Orange County.  In other words, the documents that Defendants ask the Court to consider—documents from the Orange County Sheriff's Office investigation—are not integral to the Amended Complaint merely because Plaintiff mentions and arguably relies on allegations that Summit made in other investigations.

*Cf. Global Network*, 458 F.3d at 156 (explaining that the complaint's reference to an individual's guilty pleas "cannot open the door to the content of his testimony proffered in exchange for the pleas, as the nexus between the two is too attenuated to render that testimony integral to the complaint").

Plaintiff also alleges that "[u]pon information and belief, between January 13, 2011 and January 18, 2011, Cottone participated in and oversaw the investigation that led to the arrest of Plaintiff."  (Am. Compl. ¶ 46).  While it is clear that Plaintiff was aware of an investigation, "mere notice . . . is not enough" for the integral exception to apply.  *Global Network*, 458 F.3d at 156 (internal quotation marks omitted).  Rather, a Plaintiff must "rel[y] heavily" upon a document's terms and effect to "render[] [it] integral to the complaint."  *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).  Here, as Plaintiff only references allegations in connection with other investigations and mentions no documents in connection with Cottone's investigation, the Court does not find that Plaintiff "relie[d] heavily" on the Incident Report, depositions, or the Misdemeanor Complaint in drafting the Amended Complaint.  *Id.* (internal quotation marks omitted).  Indeed, it is even "unclear based on [Plaintiff's] allegations whether [he] had ever seen the [documents related to the investigation] prior to filing th[e] action."  *Fanelli*, 2013 WL 601794, at *2.  Moreover, even if these documents were integral to Plaintiff's Amended Complaint, it is not "clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]" or "that there exist no material disputed issues of fact regarding the relevance of the document."  *Faulkner*, 463 F.3d at 134.  Accordingly, the Court declines to consider these documents as integral to the Amended Complaint.

Defendants also label the documents "public documents."  (Defs.' Reply 4.)  To the extent that Defendants suggest that the Court should take judicial notice of these documents

because they are in the public record, this argument is rejected.  It is worth noting that several

courts have taken judicial notice of incident reports, arrest reports, police reports, and similar

materials on a motion to dismiss, not for the truth of their contents, but rather to establish their

existence.  *See e.g.*, *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *5

(E.D.N.Y. Sept. 24, 2013) (considering complaint reports, follow-up reports to the complaint,

and arrest reports "but only to establish their existence and legal effect, or to determine what

statements they contained[,] not for the truth of the matter asserted" (alterations and internal

quotation marks omitted)); *Wingate v. Deas*, No. 11-CV-1000, 2012 WL 1134893, at *1 n.1

(E.D.N.Y. Apr. 2, 2012) (taking judicial notice of arrest reports); *Wims v. N.Y.C. Police Dep't*,

No. 10-CV-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (explaining that a district

court may take judicial notice of "arrest reports, criminal complaints, indictments[,] and criminal

disposition data" when resolving a motion to dismiss); *Harris v. Howard*, No. 08-CV-4837, 2009

WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) ("[I]t is well established that a district court may

rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including

arrest reports, criminal complaints, indictments, and criminal disposition data." (internal

quotation marks omitted)).  Other courts, however, have declined to do so.  *See e.g.*, *Coggins v.

County of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at *6 & n.4 (E.D.N.Y. June 20, 2008)

(declining to consider police reports on a motion to dismiss because they do not fall within the

exceptions the Second Circuit has established, specifically that a court may consider a document

if it is incorporated into the complaint by reference or take judicial notice of documents filed in

other courts); *Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *6 (E.D.N.Y.

Dec. 27, 2007) (declining to take notice of "non-judicial documents (such as police reports)" on

a motion to dismiss a claim for false arrest); *accord Eubank v. Wesseler*, No. 10-CV-210, 2011

WL 3652558, at *3 n.2 (E.D. Ky. Aug. 19, 2011) (explaining that "[t]he vast majority of cases hold that police reports do not constitute matters of public record appropriate for judicial notice" and collecting cases); *cf. Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *6 (E.D.N.Y. Mar. 29, 2009) (refusing to consider a document "from the New York Police Department's booking system" because the document was "more akin to a police report that is not properly considered" on a motion to dismiss).

Under Federal Rule of Evidence 201, "a court may take judicial notice, whether requested or not[,] of a fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (alteration and internal quotation marks omitted) (quoting Fed. R. Evid. 201(b)–(c)). "More generally, the 'traditional textbook treatment' of Rule 201 has included two categories for judicial notice: 'matters of common knowledge' and 'facts capable of verification.'" *Id.* (quoting Fed. R. Evid. 201, Advisory Committee Notes, Note to Subdivision (b)). Put another way, facts appropriate for judicial notice must "meet either [one of the] test[s] of indisputability contained in Rule 201(b): they [should be] common knowledge, [or] . . . derived from an unimpeachable source." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Id.*

As to the second category of facts of which a court may take judicial notice—those that are "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned," *Bari*, 599 F.3d at 180 (internal quotation marks omitted),—the Second Circuit has approved judicial notice of certain types of documents.  Most relevant here, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Global Network*, 458 F.3d at 157 (internal quotation marks omitted); *see also Int'l Star Class Yacht*, 146 F.3d at 70 (same).  Defendants do not represent, however, that the Incident Report, depositions, or Misdemeanor Complaint were filed in a court in connection with Plaintiff's bench trial.  Nor do they argue that the documents are appropriate for consideration based on other Second Circuit precedent.  Finally, Defendants offer no argument as to how these documents are "derived from an unimpeachable source," *Int'l Star Class Yacht*, 146 F.3d at 70, or otherwise "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," *Bari*, 599 F.3d at 180 (alteration and internal quotation marks omitted) (quoting Fed. R. Evid. 201(b)–(c)).  Keeping in mind that "caution must be used in determining that a fact is beyond controversy under Rule 201(b)," *Int'l Star Class Yacht*, 146 F.3d at 70, and in light of the fact that district courts appear to be unsettled on whether judicial notice of materials such as these is appropriate at the motion to dismiss stage, the lack of Second Circuit authority on the issue, and Defendants' failure to explain how the source of these documents is unimpeachable, the Court declines to consider these documents in resolving the instant Motion.

### 2.  Claims Against the County, DuBois, and Defendants in Their Official Capacities

As an initial matter, Plaintiff "concedes that he has failed to plead plausible claims against the County and Sheriff DuBois," and therefore, "does not oppose the relief requested in Defendants' [M]otion as to the County and DuBois only."  (Pl.'s Mem. 7.)  Accordingly,

21

Defendants' Motion is granted as to all claims against DuBois and Orange County.  *See Willner ex rel. Willner v. Doar*, No. 12-CV-1955, 2013 WL 4010205, at *1 (E.D.N.Y. Aug. 5, 2013) (dismissing a claim after the plaintiff made concessions in his opposition brief and consented to the dismissal of his due process claim); *Murphy v. Keller Indus., Inc.*, No. 95-CV-7643, 2002 WL 91622, at *1 (S.D.N.Y. Jan. 23, 2002) (granting the government's motion to dismiss the claim against it after the plaintiff, in her opposition papers, "expressly conced[ed] that her claim against the [g]overnment [was] barred by the Federal Tort Claims Act").  Moreover, as Plaintiff does not press his claim against Orange County, the Court will grant Defendants' Motion as to claims against Cottone and Carpentier in their official capacities.  *See Raymond v. Bunch*, 136 F. Supp. 2d 71, 77 (N.D.N.Y. 2001) (explaining that as "[s]uits against municipal defendants in their official capacities are akin to suits against the municipality itself, . . . liability may only be imposed in an 'official capacity' suit under Section 1983 to the extent that the municipality itself could be held liable under that statute").  Indeed, Plaintiff makes clear that he "continues to assert civil rights violations against Cottone and Carpentier in their individual capacities."  (Pl.'s Mem. 7.)  Accordingly, the Court only considers Plaintiff's claims against Cottone and Carpentier in their individual capacities.

### 3.  Deprivation of Federal Civil Rights Claim

Plaintiff's first claim for relief alleges that Cottone and Carpentier "deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983." (Am. Compl. ¶ 80.)  Plaintiff incorporates the factual allegations in the Amended Complaint by reference into this claim.  Plaintiff does not, however, "explain how this claim is distinct from those identified in his other claims for relief," *Widget*, 2013 WL 1104273, at *4, specifically his

22

claim for false arrest.  Because "[t]he allegations in the [Amended] Complaint do not give

Defendants fair notice of the substantive and factual grounds upon which the claim rests,"

Plaintiff's claim is insufficient under Federal Rule of Civil Procedure 8(a)(2).  *Id.*; *see also*

*Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *12 (S.D.N.Y. Mar. 31, 2009)

(same).  Moreover, Plaintiff does not address this claim in his opposition papers.  *See Widget*,

2013 WL 1104273, at *4.  Finally, to the extent Plaintiff merely alleges a violation of § 1983,

"Section 1983 is not itself a source of substantive rights, but merely provides a method for

vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

(internal quotation marks omitted); *see also Allocco Recycling, Ltd. v. Doherty*, 378 F. Supp. 2d

348, 355 n.1 (S.D.N.Y. 2005) (same).  Accordingly, Defendants' Motion is granted as to this

claim.

### 4.  False Arrest Claim

Defendants do not contest that Plaintiff has adequately alleged the first three elements of

a claim for false arrest, but rather contend that Plaintiff cannot satisfy the fourth element that

"the confinement was not otherwise privileged," *Ackerson*, 702 F.3d at 19 (internal quotation

marks omitted), because there was probable cause to arrest Plaintiff and, in any event, Cottone

and Carpentier are entitled to qualified immunity, (Defs.' Mem. 19–21).  Plaintiff argues, in turn,

that Carpentier, acting on the direction of Cottone, arrested Plaintiff without probable cause.[1]

---

[1] The Court notes that "[i]t is well settled in this Circuit that personal involvement of
defendants in alleged constitutional deprivations is a prerequisite to an award of damages under
§ 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted);
*see also Phillips v. City of New York*, 871 F. Supp. 2d 200, 203 (E.D.N.Y. 2012) (same).
Defendants do not dispute Cottone's personal involvement in the alleged constitutional
deprivations, and the Court finds that even though there is no indication in the Amended
Complaint that Cottone was present at the time of Plaintiff's arrest, Plaintiff adequately alleges
that Cottone was personally involved for liability purposes.  Specifically, Plaintiff alleges that
Cottone contacted Plaintiff to discuss the Bobcat, arrived at Plaintiff's repair shop to demand that

Specifically, Plaintiff claims that there was no probable cause because (1) Plaintiff asserted a lien against the Bobcat and advised Summit about his lien prior to the commencement of the investigation; (2) three other law enforcement agencies investigated the matter and determined that no crime had been committed; and (3) Plaintiff informed Cottone and Carpentier of the lien and the prior investigations before they placed him under arrest. (Pl.'s Mem. 8–9.)

To begin, "[n]either the ultimate disposition of an action, nor the crimes eventually charged, are dispositive of a probable cause determination." *Betts*, 2013 WL 311124, at *6. Accordingly, the fact that the Orange County District Attorney's Office dismissed all felony counts against Plaintiff for lack of jurisdiction and insufficient evidence, and that Plaintiff was acquitted of the misdemeanor count does not negate probable cause. Instead, as mentioned above, the inquiry is "whether the facts known by the arresting officer at the time of the arrest

---

Plaintiff's employees release the Bobcat to him after indicating he had a court order to seize the Bobcat, and had further conversations about the Bobcat with Plaintiff when he arrived at his repair shop. (Am. Compl. ¶¶ 32–38.) Moreover, Plaintiff alleges that "Cottone participated in and oversaw the investigation that led to the arrest of Plaintiff on January 18, 2011." (*Id.* ¶ 46.) The Court finds that these allegations "rise to the requisite level of personal involvement necessary to state a claim for false arrest," *Davis v. United States*, 430 F. Supp. 2d 67, 79 (D. Conn. 2006), as Plaintiff alleges that Cottone directly participated in the investigation, directed the investigation, and instructed Carpentier to arrest Plaintiff. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (noting that liability under § 1983 requires intentional participation in the unconstitutional conduct and may include "ordering or helping others to do the unlawful acts, rather than doing them him—or herself"); *Conte*, 2010 WL 3924677, at *11 (finding that the plaintiff "sufficiently allege[d] the personal involvement of" an assistant district attorney in his false arrest because the attorney "was the head of the [c]riminal [c]omplaint [u]nit at the time of [the complainant's] complaint regarding [the plaintiff's act] . . . . [and] testified . . . that there was an investigation and that he may have spoken with [the investigating attorney] about the [plaintiff's] matter" (internal quotation marks omitted)); *cf. Celestin v. City of New York*, 581 F. Supp. 2d 420, 429 (E.D.N.Y. 2008) (finding no personal involvement in claims for false arrest and malicious prosecution because, among other things, the defendant had "no connection with the police investigation"); *Davis*, 430 F. Supp. 2d at 79 (dismissing claim for false arrest because the plaintiff "failed to allege that [the defendant] was personally involved in any of the investigations of the two . . . incidents that led to [plaintiff's] arrest" and had "not shown any specific facts demonstrating that [the defendant] supervised the persons responsible for [the] investigations," among other things (internal quotation marks omitted)).

objectively provided probable cause to arrest" Plaintiff. *Ackerson*, 702 F.3d at 19 (internal

quotation marks omitted).  Moreover, as Plaintiff alleges that Carpenter and Cottone were

working together, the Court presumes that they shared knowledge of the facts of Plaintiff's

circumstances.  *See Abdul-Rahman*, 2012 WL 1077762, at *5.

According to the Amended Complaint and the documents the Court takes judicial notice

of, as explained above, by the time Plaintiff was arrested, Carpentier and Cottone were aware

that Plaintiff was in possession of the Bobcat and that Plaintiff claimed he had a lien on the

Bobcat for non-payment of towing services provided in connection with the equipment.  (Am.

Compl. ¶ 32.)  Plaintiff provided Cottone with evidence that he had complied with "all aspects of

the New York State Lien Law."  (*Id.* ¶ 39.)  Moreover, Plaintiff informed Cottone of the previous

investigations conducted by the Newburgh Police Department, the Beacon Police Department,

and the New York State Police Department, and of the fact that they had determined that the

matter was a civil one between Plaintiff and Summit.  (*Id.* ¶ 38.)  Cottone also knew that, despite

Cottone's requests, Plaintiff refused to release the Bobcat.  (*Id.* ¶¶ 34–38.)  Finally, by the time

of Plaintiff's arrest, Carpentier signed the Felony Complaint dated January 14, 2011.  (Am.

Compl. ¶ 56.)

It is open to question on the facts that Plaintiff alleges and the documents the Court takes

notice of in deciding the Motion whether Carpentier and Cottone had arguable probable cause to

arrest Plaintiff.  As noted above, "[a]n arresting officer advised of a crime by a person who

claims to be the victim, and who has signed a complaint or information charging someone with

the crime, has probable cause to effect an arrest absent circumstances that raise doubt as to the

victim's veracity."  *Singer*, 63 F.3d at 119; *see also Blythe v. City of New York*, 963 F. Supp. 2d

158, 182 (E.D.N.Y. 2013) (noting that "[i]nformation provided by an identified citizen accusing

another individual of committing a specific crime is sufficient to provide the police with

probable cause to arrest," and therefore granting the defendants' motion to dismiss because "an

identified individual . . . called 911 and reported" the plaintiff's wrongdoing).  In this case,

Plaintiff has alleged enough facts raising doubt about the veracity of the allegations of criminal

wrongdoing by Plaintiff.  Of course, "[o]nce a police officer has a reasonable basis for believing

there is probable cause, he is not required to . . . eliminate every theoretically plausible claim of

innocence before making an arrest."  *Widget*, 2013 WL 1104273, at *6 (internal quotation marks

omitted).  Nevertheless, "under some circumstances a police officer's awareness of the facts

supporting a defense can eliminate probable cause."  *Prevost v. City of New York*, No. 13-CV-

3760, 2014 WL 6907560, at *3 (S.D.N.Y. Dec. 9, 2014) (internal quotation marks omitted).

Here, Plaintiff alleges that he informed Cottone about the lien and the prior investigations.  (Am.

Compl. ¶ 38.)  Moreover, Plaintiff states that he "provided Cottone with evidence that Plaintiff

had complied with all aspects of the New York State Lien Law."  (Id. ¶ 39.)  It is unclear what

evidence, if any, Plaintiff provided.  At this stage, however, the Court cannot possibly determine

"whether the arresting officers deliberately disregarded facts known to them which established" a

defense, *Widget*, 2013 WL 1104273, at *6, as there is no information as to what evidence

Plaintiff provided Cottone.  *Cf. Donovan v. Briggs*, 250 F. Supp. 2d 242, 250 (W.D.N.Y. 2003)

(noting that "[t]he material facts . . . [were] not in dispute" as "[t]he parties agree[d] that there

[was] no dispute about what facts were known to [the] defendants at the time of [the] plaintiff's

arrest," and therefore, "[t]he questions presented on [the] motions [to dismiss were] legal ones,

specifically whether the known facts and inferences from them gave rise to probable cause to

arrest [the] plaintiff, and whether [the] defendants are entitled to immunity for their actions").

Finally, Defendants' arguments that Plaintiff "has not pled the essential facts that demonstrate

that he had a valid lien under New York Law" and that "[p]laintiff can show no legal authority that supports the proposition that if one police jurisdiction finds no probable cause it is the law for all jurisdictions, or a law that requires a police jurisdiction to follow the actions of other police jurisdictions regarding arrests and police procedures," are irrelevant.  (Defs.' Mem. 21.) The question is not whether Plaintiff can establish that he had a valid lien or what other police departments concluded, but rather whether the facts known by Cottone and Carpenter "objectively provided probable cause to arrest" Plaintiff.  *Ackerson*, 702 F.3d at 19 (internal quotation marks omitted).

In sum, Plaintiff has pled sufficient facts to plausibly claim that his arrest was not privileged, and there is insufficient evidence at this stage of the case to determine as a matter of law whether Cottone and Carpenter had arguable probable cause to arrest Plaintiff.  *See Prevost*, 2014 WL 6907560, at *5 (concluding that the defendant could not establish "that probable cause or arguable probable cause existed based solely on the facts alleged in the [c]omplaint" (internal quotation marks omitted)); *Castro v. Narcisse*, No. 12-CV-1535, 2013 WL 5423689, at *6 (D. Conn. Sept. 26, 2013) ("It is simply too early at this stage of litigation—where the record is wholly undeveloped—for the [c]ourt to make an informed decision based on the totality of circumstances as to whether [the defendants] had probable cause for [the] [p]laintiff's arrest or whether they are entitled to qualified immunity."); *Clay v. County of Clinton*, No. 10-CV-239, 2012 WL 4485952, at *11 (N.D.N.Y. Sept. 27, 2012) (concluding that the plaintiff pled sufficient facts that his arrest was not privileged because the plaintiff claimed he was arrested, without a warrant, where eyewitnesses told the defendants that the plaintiff did not stab the victim, the victim did not accuse the plaintiff of stabbing him, the defendants "knew that they did not have sufficient evidence to arrest and charge [the] [p]laintiff," the defendants "prepared and

filed a felony complaint that contained allegations they knew to be untrue, or knew were unlikely to be true," and the defendants "failed to investigate the exculpatory information allegedly provided by an eyewitness"); *Conte*, 2010 WL 3924677, at \*14 (explaining that the court was "unable to conclude . . . whether the [c]ounty defendants [were] entitled to qualified immunity on the issue of probable cause" because of "the gaps in the evidentiary record . . . and the disputed factual issues"). Accordingly, the Court denies Defendants' Motion to dismiss the false arrest claims against Cottone and Carpentier in their individual capacities.

### III.  Conclusion

In light of the foregoing analysis, the Court grants in part and denies in part Defendants' Motion To Dismiss Plaintiff's Amended Complaint. Specifically, the Court grants Defendants' Motion as to the claims against the County, DuBois, Defendants in their official capacities, and Plaintiff's claim for "Deprivation of Federal Civil Rights." The Court denies the Motion as to the claim of false arrest against Cottone and Carpentier in their individual capacities. The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No. 19.)

SO ORDERED.

DATED:     March 25, 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

28